1

2

3              UNITED STATES DISTRICT COURT

4            WESTERN DISTRICT OF WASHINGTON
                       AT SEATTLE
5

6   COLUMBIA SNAKE RIVER IRRIGATORS              Case No. C07-1388MJP
    ASSOCIATION,
7
                     Plaintiff,
8                                                ORDER ON PARTIES' CROSS-
                                                 MOTIONS FOR SUMMARY
9        v.                                      JUDGMENT

10  D. ROBERT LOHN, in his official capacity as
    Regional Director of the NATIONAL MARINE
11  FISHERIES SERVICE, NATIONAL MARINE
    FISHERIES SERVICE, and the UNITED
12  STATES DEPARTMENT OF COMMERCE,

13                   Defendants.

14

15          This matter comes before the Court on the parties' cross-motions for summary judgment.

16  (Dkt. Nos. 3 & 19.)  Having considered both motions, the responses and replies to those motions,

17  and all other papers submitted in support thereof, the Court orders as follows:

18          (1)  Defendants' motion for summary judgment is GRANTED IN PART and the Court

19  finds that the following documents, referred to by the number assigned to them in the

20  Government's Vaughn index, have been properly withheld under the deliberative process

21  privilege:  Doc. 1; Doc. 6(g); Doc. 9(g); Doc. 11(f); Doc. 12(e); Doc. 25(b); Doc. 2; Doc. 5(a);

22  Doc. 5(b); Doc. 5(c); Doc. 9(b); Doc. 13; Doc. 16(a); Doc. 16(b); Doc. 19; Doc. 20(a); Doc.

23  20(b); Doc. 4; Doc. 8(c); Doc. 9(b); Doc. 9(c); Doc. 9(d); Doc. 9(f); Doc. 9(h); Doc. 23; Doc.

24  24(a); Doc. 11(b); Doc. 12(b); Doc. 6(a); Doc. 6(b); Doc. 6(c); Doc. 6(e); Doc. 6(f); Doc. 8(b);

25  Doc. 10(a); Doc. 10(c); Doc. 11(a); Doc. 11(c); Doc. 11(d); Doc. 11(e); Doc. 12(a); Doc. 12(c);

26  Doc. 12(d);  Doc. 25(a); Doc. 6(d); Doc. 9(e); Doc. 10(b); Doc. 5(a); Doc. 5(c); and Doc. 9(i).

27

ORDER — 1

1    (2)  Plaintiff's motion to require documents to be submitted for in camera review is

2    GRANTED IN PART.  Defendants are directed to submit the following documents to the Court

3    within twenty days of this order:  Doc. 9(j); Doc. 3(a); Doc. 3(b); Doc. 15(a);  Doc. 22(a); Doc.

4    7; Doc. 9(a); Doc. 14(a); Doc. 14(b); Doc. 17(a); Doc. 18(a); Doc. 24(b); Doc. 14(a); Doc.

5    14(b); Doc. 15(b); Doc. 17(b); Doc. 18(b); Doc. 21(a); Doc. 21(b) ; Doc. 8(a); and Doc. 22(b).

6    The Court's reasoning is set forth below.

7    **Background**

8    The U.S. National Marine Fisheries Service ("NMFS") is a division of the National

9    Oceanic and Atmospheric Administration ("NOAA") and the Department of Commerce.  NMFS

10   is charged with managing marine resources and their habitat in accord with the Magnuson-

11   Stevens Fishery Conservation and Management Act.  NMFS must ensure compliance with

12   fisheries regulations and works to recover marine species protected under the Endangered Species

13   Act ("ESA").  The ESA mandates that NMFS create recovery plans for listed species that

14   describe particular management actions contributing to the recovery of a listed species.  (Lockhart

15   Decl. at ¶ 14.)  NMFS must also apply the standards of the ESA to its harvest and other decisions

16   to manage the natural resources under its domain.  NMFS works with the Northwest Fisheries

17   Science Center ("Science Center"), a division of NMFS, to ensure proper fishery management.

18   The Recovery Science Review Panel ("RSRP") consists of six independent scientists

19   appointed by NMFS.  (Lockhart Decl. at ¶ 17.)  The RSRP reviews NMFS's management

20   decisions related to endangered species and meets several times a year.  (Id.)  In August 2001,

21   NMFS gave a presentation to the RSRP scientists on its policies concerning salmon harvest and

22   recovery.  (Id. at ¶ 18.)  In November 2001, the RSRP released a report that generated significant

23   controversy by criticizing NMFS policy on the harvesting of endangered salmon.  (Id. at ¶ 19.)

24   NMFS's response to the report included a letter to the RSRP's Chair, Dr. Robert Paine, and two

25   letters to Jeff Koenings, Director of the Washington Department of Fish and Wildlife, and Billy

26   Frank, Chairman of the Northwest Indian Fisheries Commission.  (Id. at ¶¶ 24, 25, & 26.)

27

ORDER — 2

1    In June 2005, Plaintiffs made a request under the Freedom of Information Act ("FOIA")

2    for "any determination by NOAA Fisheries to adopt any recommendations of the [RSRP] Report

3    in any biological opinion issued by NOAA Fisheries in connection with a consultation concerning

4    harvest of listed salmonids conducted pursuant to § 7 of the Endangered Species Act." (Pl.'s Ex.

5    5 at 2.)  After exhaustion of the administrative process, Plaintiffs brought this action challenging

6    the withheld documents.  The Court has jurisdiction under FOIA and must review the claim de

7    novo.  U.S.C. § 552(a)(4)(B).  Any failure of the Agency to comply with Administrative Order

8    No. 205-14, an internal agency policy, does not affect the Court's review because internal policies

9    without the force of law are not enforceable against an agency.  United States v. Fifty-Three (53)

10   Eclectus Parrots, 685 F.2d 1131, 1135-36 (9th Cir. 1982).

11                                              **Analysis**

12   FOIA requires agencies to disclose requested documents unless those documents fall

13   within a statutory exemption.  5 U.S.C. § 552(b).  Because FOIA's purpose is to encourage

14   disclosure, its exemptions are narrowly construed.  Assembly of State of Cal. v. U.S. Dep't of

15   Commerce, 968 F.2d 916, 920 (9th Cir. 1992).  Defendants bear the burden of showing that an

16   exemption applies.  Id.

17   Defendants seek to apply exemption five, which protects "inter-agency or intra-agency

18   memorandums or letters which would not be available by law to a party other than an agency in

19   litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision includes a "deliberative

20   process" privilege, which safeguards an agency's ability to "explore possibilities, engage in

21   internal debates, or play devil's advocate without fear of public scrutiny."  Assembly, 968 F.2d at

22   920.  Application of the exemption "turns on whether disclosure of the requested information

23   would reveal anything about the agency's decisional process."  Carter v. United States DOC, 307

24   F.3d 1084, 1088 (9th Cir. 2002).  The privilege protects only expressions of opinion or

25   recommendations, not purely factual material.  In re Franklin Nat'l Bank Securities Litigation, 478

26   F. Supp. 577, 581 (E.D.N.Y. 1979).

27

ORDER — 3

1    To fall within the exemption, the withheld document must be both "pre-decisional" and

2   "deliberative." Assembly, 968 F.2d at 920.  The Ninth Circuit has defined a predecisional

3   document as "one prepared in order to assist an agency decisionmaker in arriving at his decision."

4   Assembly, 968 F.2d at 920 (internal quotes and citation omitted).  A document is deliberative "if

5   the disclosure of the materials would expose an agency's decisionmaking process in such a way as

6   to discourage candid discussion within the agency and thereby undermine the agency's ability to

7   perform its functions." Assembly, 968 F.2d at 920 (internal citations and quotation marks

8   omitted).  The documents must also be intra-agency or inter-agency, a requirement not contested

9   here.

10    Although "all information generated by a regulatory agency is presumably useful, at least

11   potentially, in some decision-making process," a predecisional document must relate to a final

12   decision or policy.  Seafirst Corp. v. Jenkins, 644 F. Supp. 1160, 1164 (W. D. Wash. 1986); see

13   also DOI v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) ("deliberative process

14   covers documents ...comprising part of a process by which governmental decisions and policies

15   are formulated").  The Ninth Circuit has indicated that "the agency must identify a specific

16   decision to which the document is predecisional." Maricopa Audubon Soc'y v. U.S. Forest Serv.,

17   108 F.3d 1089, 1094 (9th Cir. 1997).

18    The RSRP's November 2001 report generated significant controversy by criticizing

19   NMFS policy.  NMFS's response to the report included:  (1) the decision to respond to the

20   RSRP's report in an official letter to Dr. Lohn; and (2) the decision to address the concerns of

21   interested parties in two letters to Mr. Koenings and Mr. Frank.  Any documents that NMFS

22   relied on in forming those decisions are "predecisional." See Maricopa, 108 F.3d at 1094 (finding

23   that documents "prepared for the purpose of advising [the agency] as to how to respond to

24   specific allegations of unethical and even illegal conduct" are predecisional).  Although

25   Defendants also contend that some of the withheld documents contributed to the adoption of new

26   recovery plans in 2007, (see Def.'s Mtn. at 11; Lockhart Decl. at ¶ 22-23), the Government's

27

ORDER — 4

1    Vaughn index descriptions do not indicate that any of the withheld documents were part of the

2    deliberative process leading to the adoption of those plans.

3        The Court must also look to the "ultimate ends" to which the Agency's deliberations were

4    directed and judge whether the predecisional documents reflect that deliberative process.  Nat'l

5    Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1120 (9th Cir. 1988) (court found that

6    documents considering the appropriate balance between the conflicting demands placed on a

7    forest's resources were deliberative when agency was drafting a Forest Plan).  "Recommendations

8    on how best to deal with a particular issue are themselves the essence of the deliberative process"

9    and are protected from disclosure as long as they do not represent final agency action.  Id.

10       When making harvest decisions and creating and implementing recovery plans, NMFS

11   must balance tribal, commercial and environmental interests within the confines of federal law.

12   (Lockhart Decl. at ¶¶ 20, 33, 34.)  Release of the RSRP report in November 2001 exposed

13   underlying conflicts among those interests, and the Agency was forced to exercise "policy-

14   implicating judgment" in deciding upon an appropriate response.  See Ethyl Corp. v. United

15   States EPA, 25 F.3d 1241, 1248-49 (4th Cir. 1994).  The Agency's response endeavored to

16   manage its relationships with the RSRP, the Washington Department of Fish and Wildlife and the

17   Northwest Indian Fisheries Commission.  (Def. Mtn. at 17.)  In formulating a response, the

18   Agency created documents that include "recommendations, draft documents, proposals,

19   suggestions and other subjective documents which reflect the personal opinions of the writer

20   rather than the policy of the agency."  Id. at 1118 (internal citation and quotation marks omitted).

21   Documents in this category are deliberative and are properly withheld under exemption five.

22       While exemption five holds deliberative materials privileged, it does not protect "purely

23   factual, investigative matters" from disclosure.  EPA v. Mink, 410 U.S. 73, 89 (1973).  Plaintiffs

24   argue that many of the withheld documents, authored by scientists, necessarily include factual

25   information and must be disclosed.  The presence of factual information alone is insufficient to

26   preclude the privilege.  When expressions of expert opinion relate to the exercise of policy-

27

ORDER — 5

1   oriented judgment, exemption five applies.  See Nat'l Wildfire, 861 F.2d at 1119 (undercutting

2   the factual/deliberative dichotomy, "the scope of the deliberative process privilege should not turn

3   on whether we label the contents of a document 'factual' as opposed to 'deliberative'").

4          Science Center employees may have exercised judgment and expressed personal opinion in

5   assessing the RSRP report and in offering suggestions for an appropriate response.  Even if

6   Agency employees cited facts included in the RSRP report or from studies conducted

7   independently, the process of prioritizing facts and conclusions and weighing their  importance

8   and relevance is often an exercise of judgment that can affect Agency policy.  See Montrose

9   Chemical Corp. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974) (finding that the process of separating

10  pertinent from impertinent facts is a judgmental process).  Further, "disagreement over factual

11  issues and the strength or weakness of factual underpinnings" reflects "the give-and-take of the

12  consultive process."  Sierra Club v. Kempthorne, 488 F. Supp. 2d 1188, 1192 (D. Ala. 2007)

13  (citing Florida House of Rep. v. U. S. Dep't of Commerce, 961 F.2d 941, 949 (11th Cir. 1992)).

14         Plaintiff's reliance on Greenpeace v. National Marine Fisheries Serv., 198 F.R.D. 540 (D.

15  Wash. 2000) is misplaced.  Unlike Greenpeace, the decisions NMFS made in response to the

16  RSRP report required the exercise of discretionary and policy-implicating judgment.  The Agency

17  was forced to weigh competing interests and preserve relationships with other stewards of the

18  resources it manages. To the extent that the documents generated by the Agency offer

19  recommendations of policy in addition to presenting,  interpreting, and offering observation on

20  facts, they are protected by the privilege.  Nat'l Wildfire, 861 F.2d at 1119 (documents that

21  contain factual information may also be deliberative "in the sense that they make nonbinding

22  recommendations on law or policy").

23                                    **The Government's Burden**

24         To meet its burden, Defendants must provide descriptions of the withheld documents that

25  are "detailed enough for the district court to make a de novo assessment of the government's

26  claim of exemption."  Maricopa, 108 F.3d at 1092 (internal quotation marks and citation

27

ORDER — 6

1  omitted).  The government may not rely upon "conclusory and generalized allegations of

2  exemptions."  Vaughn v. Rosen, 484 F.2d 820 at 826 (D.C.Cir. 1973).

3          Defendants have submitted a "Vaughn index" describing each document and its eligibility

4  for exemption.  Id.  Many of those descriptions are sufficient to apprise the Court of the

5  deliberative nature of the withheld documents.  However, the Court finds that the Government

6  has failed to offer detailed descriptions of the policy-implicating content in several documents.

7  Though the burden remains with the government to establish exemption, the Court requests in

8  camera review of those document before determining whether they fall within the privilege.  5

9  U.S.C. § 552(a)(4)(B); Church of Scientology v. U. S. Dep't of Army, 611 F.2d 738, 742-743

10  (9th Cir. 1979).

11  I.  Properly Withheld Documents

12          The government has sufficiently supported its claim of exemption for a portion of the

13  documents.  Drafts of the letter to Dr. Paine (Doc. 1) and of the letters to Mr. Koenings and Mr.

14  Frank (Doc. 6(g); Doc. 9(g); Doc. 11(f); Doc. 12(e); Doc. 25(b)) are properly withheld as

15  predecisional and deliberative.  The documents containing an Agency employee's subjective

16  evaluation of the RSRP report along with recommendations as to the tone and content of the

17  Agency's letters responding to the report and to criticism resulting from the report also fall within

18  the privilege.  (Doc. 2; Doc. 5(a); Doc. 5(b); Doc. 5(c); Doc. 9(b); Doc. 13; Doc. 16(a); Doc.

19  16(b); Doc. 19; Doc. 20(a); Doc. 20(b).)

20          The emails that include an Agency employee's subjective evaluation of the content of the

21  letters from Mr. Koenings and Mr. Frank and offer recommendations for a response are properly

22  withheld.  (Doc. 4; Doc. 8(c); Doc. 9(b); Doc. 9(c); Doc. 9(d); Doc. 9(f); Doc. 9(h); Doc. 23;

23  Doc. 24(a).)  Likewise, the emails discussing an editorial written by Mr. Frank on the subject of

24  the RSRP report are also subjective and informed the content of the letters to Mr. Koenings and

25  Mr. Frank.  (Doc. 11(b); Doc. 12(b)).  As the Agency prepared drafts of those letters, emails

26  discussing their content were exchanged and these also fall within the privilege.  (Doc. 6(a); Doc.

27

ORDER — 7

1   6(b); Doc. 6(c); Doc. 6(e); Doc. 6(f); Doc. 8(b); Doc. 10(a); Doc. 10(c); Doc. 11(a); Doc. 11(c);

2   Doc. 11(d); Doc. 11(e); Doc. 12(a); Doc. 12(c); Doc. 12(d);  Doc. 25(a).)  Finally, Documents

3   6(d), 9(e), and 10(b) contain Agency employees' strategy for coordinating the creation of the final

4   documents to be sent to Mr. Koenings and Mr. Frank, and are properly withheld.

5         In documents 5(a), 5(c), and 9(i), Agency employees offer suggestions for preventing

6   confusion between the Agency and the RSRP in the future.  The Agency's conclusions on this

7   issue are contained in the letter to Dr. Paine and the documents are properly withheld as

8   predecisional and deliberative.

9   II.  <u>Documents Requiring In Camera Review</u>

10         Document 9(j) includes a list of the topics Agency employees were instructed to cover

11   during their August 2001 presentation to the RSRP.  This portion of the email does not reveal the

12   Agency's deliberative process and should be disclosed.  However, the Agency also contends that

13   the document contains an "Agency employee's opinion as to information that should be used in

14   responding to the Letter received from Mr. Koenings and Mr. Frank."  In camera review is

15   required to determine what portions of the letter are properly withheld.

16         It is unclear whether the Agency has met its burden of showing that the privilege applies

17   to documents 3(a); 3(b); 15(a); and 22(a).  These documents discuss a draft report that the

18   Agency considered releasing in response to the RSRP report.  The Agency's letter to Dr. Paine

19   indicated that the report was forthcoming and the Government has failed to assert that its decision

20   not to release the report was part of its official response to the RSRP report.  The Court cannot

21   determine whether these documents formed part of the Agency's deliberative process without in

22   camera review.

23         Several of the government's <u>Vaughn</u> descriptions are vague and conclusory and indicate

24   that the withheld documents may include factual information.  The Agency has failed to

25   adequately allege how the following documents were part of the deliberative process:  Doc. 7;

26   Doc. 9(a); Doc. 14(a); Doc. 14(b); Doc. 17(a); Doc. 18(a); Doc. 24(b).

27

1    Finally, many of the documents contain discussions about how the Agency can implement

2    or incorporate the RSRP's suggestions and criticism.  The government admits that documents

3    14(a); 14(b); 15(b); 17(b); 18(b); 21(a); and 21(b) address "how the Agency can incorporate the

4    RSRP's recommendations into Harvest determinations."  (Def.'s Mtn. at 15 fn14.)  In addition,

5    documents 8(a) and 22(b) seem to address this issue.  In its <u>Vaughn</u> descriptions, the Agency

6    failed to identify any harvest determinations that resulted from  the deliberative process that

7    includes these discussions.

8                                                          **Conclusion**

9    (1)  The Court finds that the Government has met its burden of showing that the

10   deliberative process privilege applies to the following documents:  Doc. 1; Doc. 6(g); Doc. 9(g);

11   Doc. 11(f); Doc. 12(e); Doc. 25(b); Doc. 2; Doc. 5(a); Doc. 5(b); Doc. 5(c); Doc. 9(b); Doc. 13;

12   Doc. 16(a); Doc. 16(b); Doc. 19; Doc. 20(a); Doc. 20(b); Doc. 4; Doc. 8(c); Doc. 9(b); Doc.

13   9(c); Doc. 9(d); Doc. 9(f); Doc. 9(h); Doc. 23; Doc. 24(a); Doc. 11(b); Doc. 12(b); Doc. 6(a);

14   Doc. 6(b); Doc. 6(c); Doc. 6(e); Doc. 6(f); Doc. 8(b); Doc. 10(a); Doc. 10(c); Doc. 11(a); Doc.

15   11(c); Doc. 11(d); Doc. 11(e); Doc. 12(a); Doc. 12(c); Doc. 12(d);  Doc. 25(a); Doc. 6(d); Doc.

16   9(e); Doc. 10(b); Doc. 5(a); Doc. 5(c); and Doc. 9(i).

17   (2)  The Court requests in camera review of the remaining documents.  Defendants are

18   directed to submit the following documents to the Court within twenty days of this order:  Doc.

19   9(j); Doc. 3(a); Doc. 3(b); Doc. 15(a);  Doc. 22(a); Doc. 7; Doc. 9(a); Doc. 14(a); Doc. 14(b);

20   Doc. 17(a); Doc. 18(a); Doc. 24(b); Doc. 14(a); Doc. 14(b); Doc. 15(b); Doc. 17(b); Doc. 18(b);

21   Doc. 21(a); Doc. 21(b) ; Doc. 8(a); and Doc. 22(b).  Because the burden remains with

22   Defendants, the Government may provide additional briefing as to why the requested documents

23   have been withheld.

24

25   The Clerk is directed to send a copy of this order to all counsel of record.

26   Dated:  March 18, 2008.

27

ORDER — 9

1

2

Marsha J. Pechman

3

4   U.S. District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER — 10